UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WILLIAM J. ROWAN                           CIVIL ACTION

VERSUS                                     NO: 12-712

CHEM CARRIER TOWING, LLC                   SECTION: R(3)


**ORDER AND REASONS**

Defendant Chem Carrier Towing, LLC moves for partial summary judgment on plaintiff William J. Rowan's claim for punitive damages for defendant's allegedly arbitrary and capricious denial of plaintiff's cure demand.[1]  Defendant also moves the Court to strike the affidavit and report of plaintiff's treating physician Dr. John Sledge.[2]  The Court denies defendant's motion for partial summary judgment because plaintiff has offered sufficient evidence to create a question of material fact as to whether defendant arbitrarily and capriciously denied his cure demand.  The Court also denies defendant's motion to strike the affidavit and report of Dr. Sledge because Federal Rule 26(a)(2)(B)'s expert report requirement does not apply to treating physicians.

---

[1] R. Doc. 80.

[2] R. Doc. 83

I.    BACKGROUND

This is a personal injury action arising under the Jones Act, 46 U.S.C. § 30104, and general maritime law.  Plaintiff alleges that he was injured in two accidents while working as a deckhand for defendant.  First, on November 18, 2010, plaintiff injured his left shoulder while working aboard the M/V Sandy B, a vessel owned and operated by defendant.[3]  Plaintiff was treated by Dr. Craig Green, who performed a left shoulder arthroscopic rotator cuff repair.  Plaintiff re-injured his left shoulder on May 29, 2011 while working aboard the M/V George Batna, another vessel owned and operated by defendant.[4]  Once again, Dr. Green performed a left shoulder surgery to repair the damage.  Plaintiff also treated with orthopedic surgeon Dr. Felix Savoie, who performed a left shoulder revision surgery on June 5, 2012.[5]

Plaintiff contends that the May 29, 2011 accident also caused a thoracic spine injury "and/or aggravation of a pre-existing thoracic spine condition."[6]  Plaintiff underwent thoracic spine surgery on November 26, 2013 and argues that defendant is liable for punitive damages for its allegedly arbitrary and capricious

---

[3] R. Doc. 80-3 at 1.

[4] *Id.*

[5] *Id.*

[6] R. Doc. 82-24 at 1.

decision to deny payment for the surgery.[7]

   Plaintiff's thoracic spine condition was first identified by Dr. Dan Hodges, a pain physician who treated plaintiff at the referral of defense counsel.   Dr. Hodges first noticed an abnormality on plaintiff's thoracic spine on January 9, 2013.[8] Upon noticing this abnormality, Dr. Hodges ordered a thoracic spine MRI.   The thoracic spine MRI showed an abnormality within plaintiff's thoracic cord "most compatible with an arachnoid or epidermoid cyst."[9]   The MRI also depicted herniations at T4-5, T5-6, and T6-7, "all indenting [the] ventral thoracic cord."[10]   After reviewing the thoracic spine MRI, Dr. Hodges referred plaintiff to orthopedic surgeon Dr. John Sledge.

   Upon learning of plaintiff's thoracic condition, defendant scheduled an independent medical examination (IME) with Dr. Ralph Katz on June 19, 2013.   Dr. Katz reviewed plaintiff's medical records, interviewed plaintiff, and performed a physical examination.   In response to defense counsel's query "Can Mr. Rowan's November 18, 2010, or May 29, 2011, incident be linked to the back or neck pain to a degree of medical certainty?," Dr. Katz responded "I do not feel his low back symptoms or thoracic symptoms

---

[7] R. Doc. 82 at 7.

[8] R. Doc. 86-9 at 1.

[9] R. Doc. 86-10 at 1.

[10] *Id.*

are attributed to any of the accidents."[11]

After the IME with Dr. Katz, plaintiff continued treatment with Dr. Sledge.  Dr. Sledge issued a report on June 26, 2013, concluding that plaintiff suffered from

> [s]mall disk herniation at C6-C7, which are longstanding and were non-symptomatic prior to this incident.  Since the accident, he has had symptoms of cord compression. There is thoracic spinal cord changes and compression at the level of T5.  Flattening of the thoracic cord with distematomyelia at T4-T5 level.[12]

Dr. Sledge further opined that "no further orthopedic surgical intervention is needed" and that "[i]t is highly unlikely that the thoracic cord changes are due to work injury dated May 2[9], 2011."[13]  Dr. Sledge then referred plaintiff to Dr. David Weir for a neurological evaluation.

Dr. Weir examined plaintiff on August 19, 2013, and ordered an MRI of plaintiff's thoracic region.[14]  On September 10, 2013, after examining the MRI and evaluating plaintiff a second time, Dr. Weir stated that plaintiff would "more probably than not, require surgical decompression" to address his thoracic condition.[15]  Dr. Weir further opined that plaintiff's thoracic condition "is, more

---

[11] R. Doc. 80-2 at 12.

[12] R. Doc. 80-2 at 4.

[13] *Id.*

[14] R. Doc. 82-8 at 3.

[15] *Id.* at 5.

probable than not, related to his accident occurring on 05/2[9]/2011."[16]

Plaintiff saw a second neurosurgeon, Dr. Alan Appley, on September 11, 2013. After examining plaintiff, Dr. Appley concluded that

> Mr. Rowan has a complicated intraspinal process with spinal cord compression from an arachnoid cyst from T4-T5 and a left T6-T7 disc herniation. While the arachnoid cyst is more likely congenital rather than acquired due to trauma, the work injury of May 2[9], 2011 not only aggravated the spinal cord compression from the arachnoid cyst, but it also most likely caused the T6-7 disc herniation. While the disc herniation in and of itself is certainly significant enough to warrant surgery, his spinal cord compression and neurologic compromise are compounded by the presence of the arachnoid cyst.[17]

On October 9, 2013, plaintiff scheduled an "emergency" appointment with Dr. Weir complaining of "excruciating thoracic pain."[18] After examining plaintiff, Dr. Weir concluded that plaintiff's condition was a "neurologic emergency" and stated that plaintiff "needs emergent spinal cord decompression as recommended by Dr. Alan Appley on his note of 09/11/2013."[19]

Based on Dr. Weir's conclusion that plaintiff was suffering from a "neurologic emergency," plaintiff's counsel sent defendant a letter on October 11, 2013 asking defendant to approve payment

---

[16] *Id.*

[17] *Id.* at 11.

[18] *Id.* at 7.

[19] *Id.*

for the surgery under its maintenance and cure obligation.[20]
Plaintiff's counsel attached a copy of Dr. Weir's October 9, 2013
report to the demand letter.[21] On October 16, 2013, defendant
denied plaintiff's demand stating:

> As you know, Mr. Rowan underwent an independent medical
> examination by orthopedic surgeon Ralph Katz who has
> opined that Mr. Rowan's thoracic condition was not
> causally related to the incident.[22]

On October 21, 2013, plaintiff saw Dr. Savoie to address "back
and shoulder issues."[23] Although Dr. Savoie concluded that
plaintiff had not "re-torn his shoulder," Dr. Savoie opined that
plaintiff's "severe pathology in the shoulder" prevented a more
timely discovery of his thoracic condition.[24] Dr. Savoie further
stated that plaintiff had "always complained of problems with the
upper back/thoracic spine" and agreed with Drs. Appley and Weir
that plaintiff's "spine problem needs to be corrected asap and that
this problem would be related to the original injury."[25]

On November 11, 2013, plaintiff presented to Dr. Appley

---

[20] R. Doc. 82-6 at 1.

[21] *Id.* at 2.

[22] R. Doc. 82-7 at 1.

[23] R. Doc. 82-8 at 15.

[24] *Id.*

[25] *Id.*

complaining of "severe mid thoracic pain."[26]   After examining
plaintiff, Dr. Appley concluded that plaintiff's symptoms had
worsened since his September 11, 2013 visit, and that plaintiff "is
miserable [at] this point and really should have surgery as soon as
possible."[27]

On November 15, 2013, plaintiff sent defendant a second cure
demand.   Plaintiff informed defendant that "this is a medical
emergency" and that if defendant refused to authorize payment for
the surgery, plaintiff would "have no alternative but to make
financial arrangement to have the surgery performed and seek full
reimbursement for the surgery together with Punitive Damages."[28]
Plaintiff attached the medical reports of Dr. Weir, Dr. Appley, and
Dr. Savoie, all of whom concluded that plaintiff's thoracic
condition was related to his May 29, 2011 accident.[29]   As of
November 26, 2013, defendant had not responded to plaintiff's
second cure demand, and plaintiff elected to undergo surgery.[30]

On November 27, 2013, the day after surgery, defendant denied
plaintiff's second cure demand, stating:

In further response to your request that Chem Carriers

--------

[26] *Id.* at 12.

[27] *Id.* at 14.

[28] R. Doc. 82-8.

[29] *Id.*

[30] R. Doc. 82-20.

>           pay for the thoracic surgery, as you know, Dr. Katz has
>           opined that the thoracic condition is not causally
>           related to the incident.[31]

Defendant also requested that plaintiff make himself available for a second IME before undergoing the surgery "so that we can ensure the pre-surgical medical evidence of his thoracic spine is preserved and not spoliated."[32]  Although a pre-surgery IME was not possible, defendant nevertheless scheduled a second IME with Dr. Eric Amundson.  On February 18, 2014, after reviewing plaintiff's medical records, interviewing plaintiff, and conducting a physical exam, Dr. Amundson issued his report and stated that "it is my professional opinion that Mr. Rowan did not exacerbate or aggravate his thoracic condition pathology while working on either November 18, 2010 or May 29, 2011."[33]

Defendant filed the instant motion for partial summary judgment arguing that it cannot be held liable for punitive damages because it relied on the opinions of Dr. Katz, Dr. Sledge, and Dr. Amundson in denying plaintiff's cure demands.[34]  In support of his brief in opposition, plaintiff attaches a November 10, 2014

---

[31] R. Doc. 82-10 at 1.

[32] *Id.*

[33] R. Doc. 80-2 at 14.

[34] R. Doc. 80-1 at 1.

affidavit[35] and report[36] of Dr. Sledge.   In these documents, Dr. Sledge revises the conclusion he reached in his June 26, 2013 report and states:

> At that time, June 26, 2013, [I] discussed with Rowan that the thoracic cord compression secondary to the diastematomyelia was long standing in nature and not related to the May [29], 2011 injury, but that the acute thoracic herniations at T4-5, T5-6, and T6-7 were indenting the cord and causing cord changes and symptoms due to a combination of the trapped cord and the herniations induced by the accident.[37]

Dr. Sledge thus concludes that "[i]t is my expert medical opinion that the T4-5 disc herniation, the T5-6 disc herniation, the T6-7 herniation, [and] the T7-8 disc herniation are temporally and causally related to injuries sustained during the accident on 5/[29]/2011."[38]  Defendant moves to strike Dr. Sledge's affidavit and report arguing that they are untimely under the Court's scheduling order.[39]

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant

---

[35] R. Doc. 82-16.

[36] R. Doc. 82-17.

[37] R. Doc. 82-16 at 3.

[38] R. Doc. 82-17 at 2.

[39] R. Doc. 83.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.*

at 1265.

If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in the
record is insufficient with respect to an essential element of the
nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden
then shifts to the nonmoving party, who must, by submitting or
referring to evidence, set out specific facts showing that a
genuine issue exists. *See id.* at 324. The nonmovant may not rest
upon the pleadings, but must identify specific facts that establish
a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075
("Rule 56 'mandates the entry of summary judgment, after adequate
time for discovery and upon motion, against a party who fails to
make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at
322)).


**III. DISCUSSION**

> a.   *Chem Carrier's Motion to Strike the Affidavit and Report
>       of Dr. Sledge*

Defendant moves to strike the November 10, 2014 affidavit and
report of Dr. Sledge arguing that plaintiff failed to submit Dr.
Sledge's expert report before September 19, 2014 in violation of
the Court's scheduling order and Federal Rule of Civil Procedure

26(a)(2)(B).[40]   The Court finds defendant's argument to be without

merit.

The Court's June 19, 2014 scheduling order required plaintiff

to submit "[w]ritten reports of experts, as defined by Federal Rule

of Civil Procedure 26(a)(2)(B)" by September 19, 2014.[41]   Rule

26(a)(2)(B) provides as follows:

> *Witnesses Who Must Provide a Written Report.*   Unless
> otherwise stipulated or ordered by the court, this
> disclosure must be accompanied by a written report--
> prepared and signed by the witness--if the witness is one
> retained or specially employed to provide expert
> testimony in the case or one whose duties as the party's
> employee regularly involves giving expert testimony.

The Advisory Committee Notes accompanying the 1993 Amendments

explain, however, that Rule 26's written report requirement applies

"only to those experts who are retained or specially employed to

provide such testimony . . . .  A treating physician, for example,

can be deposed or called to testify at trial without any

requirement for a written report."   Plaintiff contends, and Dr.

Sledge's report and affidavit indicate, that Dr. Sledge's opinions

are based on knowledge acquired during the course of his treatment

of the plaintiff.   Defendant does contend otherwise.   Because a

written report is not required "for a treating physician whose

testimony and opinions derive from information learned during

actual treatment of the patient," the Court denies defendant's

---

[40] R. Doc. 83-1 at 1-2.

[41] R. Doc. 57 at 2.

motion to strike.  *Knorr v. Dillard's Store Serv.*, Civ. A. No. 04-3208, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005).  *See also Wilcox v. Max Welders, L.L.C.*, Civ. A. No. 12-2389, 2013 WL 4517907, at *1 (E.D. La. Aug. 22, 2013) ("[A] treating physician . . . is not required to provide defendants with a formal written report to the extent that his opinions derive from information learned during actual treatment of the patient.").

b.      *Chem Carrier's Motion for Partial Summary Judgment*

Defendant also moves for summary judgment on plaintiff's claim for punitive damages.  Defendant contends that plaintiff's claim for punitive damages fails as a matter of law because defendant relied on the expert opinions of Dr. Katz, Dr. Sledge, and Dr. Amundson in denying plaintiff's cure demand.[42]

Until a seaman reaches the point of maximum medical improvement, he is entitled to maintenance and cure benefits[43] for injuries suffered while working on a vessel.  *See O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 41-42 (1943).  A seaman reaches maximum medical improvement when it is probable that future treatment will not result in the improvement of the seaman's condition.  *Springborn v. Am. Commercial Barge Lines, Inc.*, 767 F.2d 89, 95 (5th Cir. 1985).  "It is the medical, not the judicial,

---

[42] R. Doc. 80-1 at 1.

[43] Maintenance is a daily stipend for living expenses; cure is the payment of medical expenses.  *See Guevara v. Maintenance Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995).

determination of permanency that terminates the right to maintenance and cure." *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985). Ambiguities or doubts with respect to the entitlement to maintenance and cure must be resolved in the seaman's favor. *Cooper v. Diamond M Co.*, 799 F.2d 176, 179 (5th Cir. 1976).

Although a shipowner is entitled to investigate and require corroboration before paying a claim for maintenance and cure, the Fifth Circuit has established a sliding scale of shipowner liability for wrongful denials of maintenance and cure. *See Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995). A shipowner who is in fact liable for maintenance and cure but who reasonably denied the payments may be held liable only for the amount of maintenance and cure. *Id.* If a shipowner refuses to pay maintenance and cure without a reasonable defense, the shipowner becomes liable for compensatory damages in addition to the maintenance and cure. *Id.* "Further, if the owner rejects the claim in an arbitrary and capricious, or willful, callous, and persistent manner, the owner becomes liable for punitive damages and attorney's fees as well as maintenance and cure and compensatory damages." *Gorum v. Ensco Offshore Co.*, Civ. A. No. 02-2030, 2002 WL 31528460, at *8 (E.D. La. Nov. 14, 2002) (internal citations omitted).

The Fifth Circuit has repeatedly held that conflicting diagnoses and prognoses from various physicians present a question of fact as to the seaman's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious.  *See Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 389 (5th Cir. 1985) ("In essence, [shipowner] chose one doctor from many and followed his recommendation.  This may not be arbitrary and capricious, but it is sufficient evidence entitling Tullos to have the jury resolve his arbitrary and capricious claim."); *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) ("[When] a shipowner ha[s] relied on the opinion of its own physician (who ha[s] examined the seaman) to terminate maintenance payments in the face of conflicting medical opinions on the issue of whether maximum cure ha[s] been reached, a jury question [is] raised as to whether such behavior would entitle the seaman to punitive damages.").

Although defendant claims that it relied on the opinions of Dr. Sledge, Dr. Amundson, and Dr. Katz in denying plaintiff's cure demands, plaintiff has provided the Court with evidence indicating that defendant relied solely on the opinion of its IME physician Dr. Katz in denying plaintiff's cure demands.[44]   Indeed, when denying plaintiff's October 11 and November 15, 2013 cure demands, defendant stated:

---

[44] *See* R. Docs. 82-7 and 82-10.

> As you know, Mr. Rowan underwent an independent medical examination by orthopedic surgeon Ralph Katz who has opined that Mr. Rowan's thoracic condition was not causally related to the incident.[45]

Thus, although Dr. Sledge's June 26, 2013 opinion and Dr. Amundson's post-operation opinion support Dr. Katz's conclusion that plaintiff's thoracic condition is not causally related to his May 29, 2011 injury, plaintiff has provided the Court with sufficient evidence to create a question of material fact as to whether defendant relied solely on the opinion of Dr. Katz in denying plaintiff's October 11 and November 15, 2013 cure demands. Because a jury question is raised when a shipowner "choose[s] one doctor from many and follow[s] his recommendation," *Tullos,* 750 F.2d at 389, the Court denies defendant's motion for summary judgment on plaintiff's punitive damages claim. *See Synder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 734 (E.D. La. 2013) ("When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the trier of fact as to whether . . . an employer's termination of maintenance and cure benefits was arbitrary and capricious."); *Barclay v. Cameron Charter Boats, Inc.*, Civ. A. No. 09-462, 2011 WL 3468380, at *3 (W.D. La. Aug. 8, 2011)(denying summary judgment because "conflicting medical reports . . . [provide] sufficient evidence to have the jury resolve the seaman's arbitrary and

---

[45] R. Doc. 82-7.

capricious claim"); *Musielak v. Rowan Intern., Inc.*, 814 F. Supp 556, 558 (S.D. Tex. 1993) ("Here, where two doctors give fundamentally different interpretation of plaintiff's condition, it is impossible for the Court to summarily decide that callousness and indifference do not exist.").


**IV. CONCLUSION**

For the foregoing reasons, the Court denies defendant's motion for summary judgment on plaintiff's punitive damages claim. The Court also denies defendant's motion to strike the November 10, 2014 affidavit and expert report of Dr. Sledge.


New Orleans, Louisiana, this <u>5th</u> day of May, 2015.


<u>Sarah Vance</u>

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE